**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| M.D.R., by her parent and natural guardian, LIANNI ROSY RIVERA | : | CIVIL ACTION |
| | : | |
| v. | : | NO: 2:22-cv-00621-MAK |
| | : | |
| TEMPLE UNIVERSITY HOSPITAL | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |

**DEFENDANT TEMPLE UNIVERSITY HOSPITAL'S
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO
PRECLUDE EXPERT TESTIMONY OF PLAINTIFF'S EXPERTS JEFFREY SOFFER,
M.D. AND DANIEL ADLER, M.D., RELATING TO OPINIONS THAT ARE
SPECULATIVE AND/OR LACKING AN EVIDENTIARY FOUNDATION**

Pursuant to Federal Rule of Civil Procedure 56(c), Defendant Temple University Hospital hereby moves this Honorable Court to enter summary judgment in its favor or, in the alternative, preclude Plaintiffs' experts Jeffrey Soffer, M.D. and Daniel Adler, M.D. from testifying to opinions regarding the cause of minor Plaintiff M.D.R.'s brachial plexus injury, including that: (1) the natural forces of labor cannot cause a permanent brachial plexus injury; and (2) M.D.R.'s brachial plexus injury could only have been caused by excess lateral traction applied to the fetal head following its delivery. In support of this Motion, Defendant incorporates by reference and relies upon the Memorandum of Law, Statement of Undisputed Material Facts and supporting exhibits respectfully submitted herewith.

Respectfully submitted,


BY:     */s/ Richard S. Margulies, Esq.*
        JAMES A. YOUNG, ESQ. (PA 00213)
        RICHARD S. MARGULIES, ESQ. (PA 62306)
        BURNS WHITE LLC
        1880 John F. Kennedy Boulevard, 10th Floor
        Philadelphia, PA 19103
        jayoung@burnswhite.com
        rsmargulies@burnswhite.com
        Telephone: 215-587-1600
        Facsimile: 215-587-1699


Dated:  September 16, 2022

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| M.D.R., by her parent and natural guardian, | : | |
| LIANNI ROSY RIVERA | : | CIVIL ACTION |
| | : | |
| v. | : | NO: 2:22-cv-00621-MAK |
| | : | |
| TEMPLE UNIVERSITY HOSPITAL | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, TEMPLE UNIVERSITY HOSPITAL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO PRECLUDE EXPERT TESTIMONY OF PLAINTIFF'S EXPERTS JEFFREY SOFFER, M.D. AND DANIEL ADLER, M.D., RELATING TO OPINIONS THAT ARE SPECULATIVE AND/OR LACKING AN EVIDENTIARY FOUNDATION**

Defendant, Temple University Hospital ("TUH"), by and through the undersigned counsel, hereby files this Memorandum of Law pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Local Rule 7.1(c)., in support of its Motion for Summary Judgment or, in the Alternative, Motion to Preclude Expert Testimony of Plaintiff's Experts Jeffrey Soffer, M.D. and Daniel Adler, M.D., Relating to Opinions that are Speculative and/or Lacking An Evidentiary Foundation.

## I.    INTRODUCTION AND BRIEF SUMMARY OF THE ARGUMENT

This is a medical malpractice action in which Plaintiffs allege that minor Plaintiff M.D.R. suffered a brachial plexus injury as a the result of negligent care during her delivery at TUH on December 22, 2010. Defendants assert herein that Plaintiff cannot meet the legal standard for causation in this case and that summary judgment should be granted on that basis. In the alternative, Defendants move to preclude Plaintiff's experts from testifying as to opinions that are

speculative or lacking an evidentiary foundation. Specifically, Plaintiff's experts Dr. Soffer and Dr. Soffer should be precluded from offering opinions that (1) maternal forces of labor cannot cause a permanent brachial plexus injury; and (2) M.D.R.'s injuries were caused by excess lateral traction applied to the fetal head following its delivery.

The parties have completed fact witness depositions and exchanged expert reports, and this matter is now ripe for disposition.

## II.    <u>STATEMENT OF FACTS</u>

Defendant TUH incorporates by reference the Statement of Undisputed Facts filed contemporaneously herewith, as though fully set forth herein.

## III.    <u>STANDARD FOR SUMMARY JUDGMENT</u>

Federal Rule of Civil Procedure 56(a) states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)(quotations omitted).  In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted).

The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment must be

granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. *Tziatzios v. United States*, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id*. (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*. (*quoting Anderson*, 477 U.S. at 248). If the court determines there are no genuine disputes of material fact, then summary judgment will be granted. *Celotex*, 477 U.S. at 322.

It is well established under Pennsylvania law that "[w]here the alleged negligence is medical in nature, the plaintiff must present evidence from an expert who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated from good and accepted medical standards, and that such deviation was the cause of the harm suffered." *Watkins v. Hospital of the University of Pennsylvania*, 737 A.2d 263, 266 (Pa. Super. 1999), citing *Mitzelfelt v. Kamrin*, 584 A.2d 888, 891 (Pa. 1990). *See*, *also*, *Titchnell v. United States*, 681 F.2d 165 (3d Cir. 1982). As the Pennsylvania Supreme Court has noted:

the mere occurrence of an injury does not prove negligence, and . . . an admittedly negligent act does not necessarily entail liability; rather even when it is established that the defendant breached some duty of care owed the plaintiff, it is incumbent upon plaintiff to establish a causal connection between defendant's conduct and the plaintiff's injury.

*Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978).  Furthermore, "[s]peculative causality is insufficient to defeat a motion for summary judgment." *Watkins*, *supra*, 737 A.2d at 267.

As is set forth in Defendant's Statement of Undisputed Material Facts, Plaintiff has proffered the expert reports of Jeffrey Soffer, M.D., an obstetrician, and Daniel Adler, M.D., a pediatric neurologist, in support of her claims of negligence in this matter. Dr. Soffer opines that the physicians involved in Ms. Rivera's delivery engaged in sub-standard care causing M.D.R.'s permanent brachial plexus injury. His opinions as to both causation and standard of care are premised **entirely** on the fact that M.D.R. has a permanent brachial plexus injury. Dr. Soffer's opines that such an injury could only have occurred as "a direct result of excess lateral traction being applied to the fetal head following its delivery" and that "natural forces of labor cannot cause a permanent brachial plexus injury." *See* Exhibit "H," at 2 (APP 0457). Dr. Adler similarly opines that M.D.R.'s injuries could not have occurred from the forces of labor and that the "the traumatic neonatal brachial plexus [injury] in this [case] occurred after the fetal head was delivered as a result of the movement of the fetal head supplied by the operator." Exhibit "J" at 6 (APP 0467).

Defendants have provided expert reports of Robert Gherman, M.D., Christian Pettker, M.D. and Joshua Abzug, M.D. disputing the opinions of Plaintiff's experts as to the cause of M.D.R.'s brachial plexus injury. *See* Exhibits "M," "N," "R," "T" and "U" (APP 0485-0502, 0652-0662, 0692-0703). Collectively, these experts opine that the existence of a permanent brachial plexus injury is an insufficient basis upon which to conclude that excessive force was used by a physician at the time of birth and that forces of labor could have caused such an injury. *Id.*

For the reasons set forth below, the above causation opinions of Dr. Soffer and Dr. Adler that a permanent brachial plexus injury such as occurred in this case could only have occurred as the result of excess traction applied by a physician following delivery of a baby's head are not based on reliable scientific evidence and are insufficient to enable Plaintiff to meet her burden of proof in this case. Indeed, numerous Courts have rejected similar speculative and unreliable opinions of experts in brachial plexus injury cases based on analysis of the same literature cited by the parties' experts' herein. Accordingly, Defendant is entitled to summary judgment based on the absence of admissible expert evidence to support Plaintiff's claims of causation in this case.

## IV.   ARGUMENT

### A.  Legal Standard For Admission of Expert Testimony

In determining whether expert testimony is admissible, a party offering an expert must demonstrate, by a preponderance of the evidence that the expert's opinions comport with the requirements of Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993) (citations omitted). Federal Rule of Evidence 702 provides, in relevant part, as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . . if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) **the testimony is based on sufficient facts or data;** (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*See* Fed.R.Evid. 702 (emphasis added).  In *Daubert*, the United States Supreme Court directed that district court judges perform a gatekeeping or screening function so as to insure that scientific evidence presented by a party's expert witness is both relevant and **reliable**. *See Daubert*, 509 U.S. at 589. In order to survive a *Daubert* challenge, an expert's proposed testimony must meet a

threshold of reliability. *See* S*chneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir.2003) (citations omitted). Among the relevant factors to consider are: (1) whether the theory or technique has been, or can be tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) the degree of acceptance of the theory or technique within the relevant scientific community. *Daubert*, 509 U.S. at 593-95. Rule 702 also requires that the proposed testimony "fit" the issues in the case; testimony has been deemed to "fit" the case where it is "relevant for the purposes of the case and . . . assist[s] the trier of fact." *See Schneider*, 320 F.3d at 404.

Moreover, the United States Supreme Court has clarified that "nothing in either *Daubert* or the Federal Rules of Evidence ***requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered*.*" *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (emphasis added); *see also Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F.Supp. 2d at 569, 589 (D.N.J. 2003) (holding that expert testimony was inadmissible where the opinion was determined to be "purely speculative" and therefore "unreliable"); s*ee also In re Paoli R.R. Yard PCB Litig*., 3 F.3d 717, 742 (3d Cir. 1994) (cautioning that for expert testimony to be admissible, the expert "must have 'good grounds' for his or her belief"). Federal courts have repeatedly warned that, to be admissible, the proposed testimony "must be based on . . . methods and procedures . . . ***rather than subjective belief or speculation*.*" *See, e.g., In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir.1999) (emphasis added). It is likewise well-settled that an "expert's testimony must be accompanied by ***a sufficient factual foundation*** before it can be submitted to the jury" for consideration. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 754 (3d Cir.2000) (citation omitted) (emphasis added). Or, stated another way, expert opinions that are

too speculative and rooted in nothing other than baseless assumptions are simply inadmissible under Rule 702. *See Elcock*, 233 F.3d at 754 (likening an expert's assumption which lacked "sufficient factual predicates" to a "castle made of sand" and holding that any opinions expressed on the basis of such an assumption were improper).[1]

### B. District Court Opinions Regarding Expert Testimony In Neonatal Brachial Plexus Cases

While not binding on this Court, it is notable that various District and Circuit Courts have rejected causation opinions offered by plaintiff experts in medical negligence cases essentially identical to those offered by Dr. Adler and Dr. Soffer herein, in which it has been suggested that brachial plexus injuries cannot occur from natural labor forces alone and can only be caused by excessive traction applied by the clinician at the time of delivery. In *Castro v. United States*, Case No. 2:15-cv-378-Ftm-38CM 2016 WL 5942354 (M.D. Fl. Oct. 13, 2016), the Court granted the United States' *Daubert* Motion to preclude such an opinion. *Id.* at *6. Specifically, the United States argued the plaintiff experts presented "nothing more than a *res ipsa loquitur* theory of liability – namely, because Plaintiff suffered a permanent brachial plexus injury, [the defendant] must have acted negligently." *Id.* at *4. To counter this theory, the United States presented

---

[1] As the Third Circuit has instructively explained in a decision handed down in 2000, though the foundation requirement for expert testimony is "well developed," it is not "expressly grounded" in "one of the Federal Rules of Evidence or in the legislative history or advisory committee notes accompanying the Rules.  Like the case law and trial practice governing cross-examination for bias . . . *the foundation requirement is a rule of evidence that can only be found in the interstitial gaps among the federal rules*." *See Elcock*, 233 F.3d at 756, fn. 13 (emphasis added). The *Elcock* Court explained that proposed testimony that is based upon the expert's bare assumptions does not satisfy Rule 702 because it fails to "assist the trier of fact" as the Rule requires. *See id.*  It further noted that: "This type of an opinion misleads the fact-finder and arguably does not comply with the 'fit' requirement" of a *Daubert* inquiry. *Id.* As an aside, when confronted with similar proposed testimony, Pennsylvania state courts have likewise held that "the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture . . . ." *See, e.g., McMahon v. Young*, 442 Pa. 484, 486 (Pa. 1971). In reaching that determination, Pennsylvania state courts have consistently reasoned that speculative testimony does not aid the trier of fact and thus should be stricken on that basis. See, e.g, *Duquesne Light Co. v. Woodland Hills School Dist.*, 700 A.2d 1038 (Pa. Cmwlth. 1997).

7

testimony from two experts, including Robert Gherman, M.D., an expert for TUH herein, who opined that brachial plexus injuries can occur from natural labor forces, and that the existence of such an injury by itself is not evidence that excessive traction was used. *Id.* The Court agreed, finding:

> [a]ll credible evidence before this Court suggests that **brachial plexus injuries can and do occur in a fixed percentage of births where the clinician applies no traction.**

*Id.* at *6 (emphasis added). In making this finding, the Court found the 2014 ACOG compendium on Neonatal Brachial Plexus Palsy "particularly persuasive." *Id.* at *5. As noted in TUH's Statement of Undisputed Material Facts, both Dr. Gherman and the USA's Maternal Fetal Medicine expert Christian Pettker, M.D. cite the same publication in support of their opinions herein, including that "No published clinical or experimental data exist to support the contention the presence of persistent (as opposed to transient) neonatal brachial plexus palsy implies the applicable of excessive force by the birth attendant." Exhibits "M" at 3, "P" at xvi, and "R" at 8.

The *Castro* Court also found the Court's decision in *Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947 (8th Cir. 2014), a similar brachial plexus case, to be instructive. *Castro*, *supra*, at 5. The Trial Court in *Lawrey* likewise precluded the plaintiff's expert from testifying that a brachial plexus injury is "always the result of traction applied to an infant's head and neck by the birth-attendant, or that the injury to [the plaintiff] was caused by [the physician] applying excessive traction to [the plaintiff's] head and neck." *Lawrey v. Kearney Clinic, P.C.*, No. 8:11-cv-63, 2021 WL 3583164, at *4 (D. Neb. Aug. 20, 2012). The Eight Circuit affirmed the trial court's decision, finding the expert's opinion were incongruent with the facts before the Court. *Lawrey*, 751 F.3d at 953.

More recently, the District Court in *Williams v. United States*, 455 F.Supp. 3d 403 (E.D. MI. 2020), held the plaintiff did not meet her burden where her experts opined that an infant's brachial plexus injury was caused by excessive traction applied by an obstetrician at birth. *Id.* at 405. Plaintiff's experts in *Williams* offered similar opinions as Dr. Soffer and Dr. Adler in this case that "greater than 40 pounds of force must have been applied during delivery for H.P. to sustain the permanent injuries to her brachial plexus. *Id.* at 413. The Court noted that a number of state and federal court decisions, including *Lawrey*, *supra*, "have held that **a plaintiff cannot meet their evidentiary burden by relying only on the fact of the brachial plexus injury itself.**" *Id.* (emphasis added)(citing *Kawache v. United States*, No. 08-3128, 2011 WL 441684, *5, 7 (E.D.N.Y. February 7, 2011) aff'd 471 Fed. App'x 10 (2nd Cir. 2012); *Araoz v. United States,* No. 06-2149, 2008 WL 11449314 (D.N.J. March 24, 2008) *aff'd* 337 Fed. App'x 207 (3rd Cir. 2009); *Lawrey*, *supra*; *Madrigal v. Mendoza*, 639 F. Supp. 2d 1026, 1032 (D. Ariz. 2009); *Johnson v. St. Barnabas Hosp.*, 52 A.D.3d 286, 287–88, 860 N.Y.S.2d 40 (N.Y. App. Div. 2008); *Hawkins v. OB-GYN Assoc.*, 290 Ga. App. 892, 894, 660 S.E.2d 835 (Ga. Ct. App. 2008); *Sturgis v. Bayside Health Ass'n Chartered*, 942 A.2d 579, 588 (Del. 2007); *Rieker v. Kaiser Found. Hosps.*, 194 Or.App. 708, 96 P.3d 833, 837 (2004). The *Williams* Court concluded:

> While these cases are not from this jurisdiction and therefore do not have precedential weight, their reasoning is persuasive. In this case, all of the credible eye-witness testimony supports the conclusion that none of the doctors used excessive downward lateral or rotational traction on H.P.'s head during the delivery. In addition, as described below in the Causation section of this opinion, **the medical literature indicates that maternal forces of labor can cause brachial plexus injuries.** Therefore, **the fact of the brachial plexus injury itself is not enough to conclude that the delivering obstetrician must have been negligent.**

Id. at 414 (emphasis added). As was the case in *Castro*, *supra*, the *Williams* Court concluded that plaintiff's experts' opinions were contradicted by the leading literature on the subject, namely the 2014 ACOG report, discussed *infra*. *Id.* at 415-18.

Applying the above legal standards to the facts in the case at bar, Drs. Soffer and Adler offer opinions that are speculative and unreliable, since their opinions are lacking a sufficient factual or scientific foundation.

### C.     Dr. Soffer and Dr. Adler Should Be Precluded From Offering Causation Opinions That Lack Factual And Scientific Support

Dr. Soffer opines in his expert report that "[p]ermanent brachial plexus injury occurs as a direct result of excess later traction being applied to the fetal head following its delivery," and that the "injury to [Plaintiff's] brachial plexus occurred either following the delivery of the head by Dr. Horton or by Dr. Turner during his initial attempt at delivery or in between the application of the internal maneuvers." Exhibit "H" at 2 (APP 0457). In providing this opinion, Dr. Soffer makes the bold claim that the "natural forces of labor cannot cause a permanent brachial plexus injury." *Id.* (emphasis added). Instead, Dr. Soffer opines that "[i]njury to the brachial plexus occurs after the delivery of the fetal head as a result of excess lateral traction in an otherwise healthy fetus." *Id.* (emphasis added). Dr. Soffer cites four articles as being "very supportive" of his opinions. *Id.*

One such article cited by Dr. Soffer is *On the Mechanical Aspects of Shoulder Dystocia and Birth Injury*, by Robert Allen, Ph.D.[2] *See* Robert H. Allen, Ph.D., *On the Mechanical Aspects of Shoulder Dystocia and Birth Injury*, Clinical Obstetrics and Gynecology, 50:607-623 (2007), Exhibit "W" (APP 0787-0804). Dr. Allen explains that while the natural forces of labor "**normally do not produce [the force needed] to stretch the brachial plexus beyond its normal elastic limit,**"

---

[2] Dr. Allen is not a medical doctor, but rather a Ph.D with the Department of Biomedical Engineering at The Johns Hopkins Whiting School of Engineering and School of Medicine.

10

such injuries "**do occur in the absence of recorded or probable shoulder dystocia or in the absence of traction.**" *Id.* at 613-14 (APP 0794-0795) (emphasis added). He further states that these injuries "do constitute a small percentage of all injuries, and are **almost always** temporary." *Id.* at 614 (APP 0795). Put another way, Dr. Allen explains that a permanent brachial plexus injury **can occur without any traction and due solely to the natural forces of labor**. This publication certainly does not support Dr. Soffer's conclusion that Plaintiff's injury could not have been caused by forces of labor and must have resulted from excess traction.

Another article that Dr. Soffer purports to rely upon is *Shoulder Dystocia*, by Edith Gurewitsch, M.D., and Dr. Allen. *See* Edith H. Gurewitsch, M.D., Robert H, Allen, Ph.D., *Shoulder Dystocia*, Clinics in Perinatology, 34:365-385 (2007), attached hereto as Exhibit "X" (APP 0805-0826). Drs. Gurewitsch and Allen, while not being legal professionals, do take time to address the concept of *res ipsa loquitur*. *Id.* at 371 (APP 0812). Specifically, Drs. Gurewitsch and Allen state:

> [j]ust as it is compelling to believe that every misadventure in the process of labor and delivery could have been foreseen and forestalled, so too is the notion that if handled properly conditions that may predispose to injury should never actually result in injury. **Such is the standard allegation by plaintiffs' attorneys (and many of their experts): The mere existence of a permanent brachial plexus palsy that was present from birth no matter its extent or classification necessarily bespeaks negligence or misconduct on the part of the delivering clinician.**

*Id.* (emphasis added). The article goes on to expressly disapprove of the very opinion Dr. Soffer here seeks to present:

> This issue – the conflation of causation with the standard of care – as the allegation of *res ipsa loquitur* **does not have evidentiary support in the available medical literature.**

*Id.* (italics in original) (emphasis added). In support of this claim, Drs. Gurewitsch and Allen explain that stretch-induced brachial plexus injuries are "readily, **although not exclusively,**

produced by clinician-applied traction." *Id.* (emphasis added). In other words, as Dr. Allen explained in Ex. H, *supra*, the natural forces of labor can cause these injuries, contradicting Dr. Soffer's opinion that can never occur. Further, even where there is "excessive traction" for the injured brachial plexus nerves, however, Drs. Gurewitsch and Allen explain that the traction used "may not have been excessive for the delivery." *Id.*

Not only do these articles Dr. Soffer relies upon contradict his opinions in this matter, the organization of which he is a fellow disagrees with him. Dr. Soffer is currently a fellow with the American College of Obstetricians and Gynecologists ("ACOG"). *See* Exhibit "I." As referenced *supra*, in 2014, ACOG published a report reviewing "the current state of the scientific knowledge, as set forth in the peer-reviewed and relevant historical literature, about the mechanisms which may result in neonatal brachial plexus palsy." *See* ACOG, *Neonatal Brachial Plexus Palsy* (2014), Exhibit "P" (APP 0516-0644). This report was "developed under the direction of the American College of Obstetricians and Gynecologists' Task Force on Neonatal Brachial Plexus Palsy," to which Defendant's expert Dr. Gherman was the chair. *Id.* at v (APP 0522). The report is "primarily intended **to inform the College's Fellows** about the existing state of knowledge as to the etiology, as well the prediction, management, and treatment of neonatal brachial plexus palsy." *Id.* at xi (APP 0528) (emphasis added).

Throughout the course of the Report, the ACOG Task Force repeatedly discusses how, contrary to what Dr. Soffer claims, brachial plexus injuries can occur due to the natural forces of labor **without** the presence of excess traction. Specifically, the ACOG Report reported that:

> Stretch in the brachial plexus occurs during the birth process itself, as shown by both computer and physical models, and it can occur in the nerves of either or both anterior and posterior shoulders. This stretch results from differential motion between the fetal head and shoulders after some element of the maternal antimony halts or retards the progression of the larger shoulders through the birth canal.

12

*Id.* at 23 (APP 0560) (emphasis added)(citations omitted). With regard to permanent brachial plexus injuries, the Task Force found that:

> During a posterior shoulder impaction at the level of the sacral promontory, it is not possible for the clinician to apply extraction forces that are often put forth as the cause of the injury because the head has not delivered. The high rate of posterior shoulder involvement in deliveries that do not involve shoulder dystocia indicates that **severe and persistent injuries may occur to the brachial plexus without the clinician's application of traction during delivery**.

*Id.* at 28 (APP 0565) (emphasis added)(citations omitted). The ACOG Report goes on to specifically address how labor forces can cause brachial plexus injuries, stating:

> There is some evidence that the cardinal movements of labor alone may cause stretch in the brachial plexus, but the extent of this stretch requires more investigation. Thus, the clinical and biomedical engineering evidence supports the assertion that when a shoulder is restrained either transiently or during a more significant impaction, both maternal forces and clinician forces, if applied, will stretch the brachial plexus.

*Id.* at 34-35 (APP 0571-0572) (citations omitted). Next, Dr. Soffer's opinion is directly contradicted by the ACOG Report when it discusses whether the existence of a brachial plexus injury is evidence that excess traction or other outside forces caused the injury:

> **In addition to research within the obstetric community, the pediatric, orthopedic, and neurologic literature now stress that the existence of [neonatal brachial plexus palsy] following birth does not a priori indicate that exogenous [clinician] forces are the cause of this injury.** The pediatric neurologic community also has reviewed the literature on causation and has similarly concluded that, '**The obstetrician's efforts to relieve shoulder dystocia are not the whole explanation for brachial plexus birth injuries. Expulsive forces (ie, endogenous forces) generated by the uterus and the abdominal wall ... may be contributory in many cases.**

*Id.* at 37  (APP 0574) (emphasis added)(citations omitted). The ACOG Report expressly states that Dr. Soffer's opinion, that "natural labor forces cannot cause a permanent brachial plexus injury," is **not** supported by the pediatric, orthopedic, and neurologic literature or the obstetric community:

> **Neither high-quality nor consistent data exist to suggest that [brachial plexus injuries] can be caused only by a specific amount of applied force** beyond that

13

> typically used by health care providers and experienced during a delivery without
> [a brachial plexus injury].

*Id.* (emphasis added). The ACOG report, which is intended to inform ACOG Fellows like Dr.

Soffer of the "existing state of knowledge as to the etiology, as well the prediction, management,

and treatment" of brachial plexus injuries," states in no uncertain terms that Dr. Soffer's opinion

is **not** supported by "high-quality" or "consistent data." *See*, *also*, Johnson G.J., et al,

*Pathophysiologic Origins of Brachial Plexus Palsy*, Obstetrics & Gynecology, 136(4): 725-730

(2014), cited by Dr. Gherman (Exhibit "M" at 5) (APP 0490):

> Although it might be hypothesized that transient brachial plexus injury may occur
> as a result of the above-described uterine forces but permanent injury could only
> occur as a result of excessive, physician applied traction, neither published data nor
> biologic plausibility support such a concept. Because the severity of any tissue
> injury is related both to the force applied and a variable resistance of involved tissue
> to injury, such a binary mode of injury is not only completely unsupported by
> clinical data but also ignores known biologic variability in the susceptibility of
> human soft tissue, including neural tissue, to traumatic injury and recovery.

Exhibit "Q" at 4 (APP 0649).

Not only are Dr. Soffer's opinions unsupported by both the articles he cites and the

organization of which he is a Fellow, the facts (or lack thereof) of this matter do not support his

opinion that either Dr. Horton or Dr. Turner used excessive traction during Plaintiff's delivery. Dr.

Soffer points to no deposition testimony or medical records to suggest any physician used unusual

or excessive traction in performing the delivery. Indeed, he cannot do so because **no one offered**

**such testimony.** *See* Undisputed Statement of Material Facts. Both Dr. Turner and Dr. Gomez

testified that only "gentle traction" was used during the delivery. *See* deposition transcript of Dr.

Turner, Exhibit "C" at 63:3-9; 64:15-22; 66:8 – 67:14; 70:9-12; 72:3 – 73:1; 74:24 – 75:18 (APP

0213; 0214; 0216-0217; 0220; 0222-0225); deposition transcript of Dr. Gomez, Exhibit "D" at

14:16-23 (APP 0239). No countervailing evidence has been cited by Dr. Soffer to support his claim

that excessive traction was used at the time of birth. Indeed, neither Ms. Rivera, her mother nor her sister testified to observing any of the medical providers using what could be described as excessive force or traction in performing the delivery. *See* deposition transcript of Ms. Rivera Exhibit "B" at 49:2-22; 51:17 – 52:15; 54:16 – 55:10, 55:22 – 57:10 (APP 0062; 0064-0065; 0067-0070); deposition transcript of Ms. Pimental, Exhibit "F" at 32:9 – 33:15; 49:18-25 (APP 0378-0379; 0395); deposition transcript of Ms. Martinez-Moran, Exhibit "G" at 28:23 – 29:13 (APP 0430-0431).

Ultimately, Dr. Soffer opinion conflates causation with the standard of care by asserting that the existence of a permanent brachial plexus injury is proof of substandard care, a tactic expressly disapproved of by the Gurewitsch and Allen article he claims is "very supportive" of his opinions. Moreover, his opinions are clearly not supported by the 2014 ACOG Task Force report and other medical literature and lack factual support in the evidence of record.

Dr. Adler likewise claims in his report, with regard to causation, that "maternal forces have **never** been proven to be the cause of a permanent neonatal brachial plexus injury when the fetus does not have exaggerated risk of nerve stretch." Exhibit "J" at 6 (APP 0467). From this, Dr. Adler concludes that Plaintiff's injuries "did not occur from the forces of labor nor from the mother pushing during labor," and that Plaintiff's injuries occurred "as a result of the movement of the fetal head supplied by the operator" *Id.* Like Dr. Soffer, Dr. Adler also cited to the Dr. Allen article, *On the Mechanical Aspects of Shoulder Dystocia and Birth Injury*, discussed *supra*. Thus, Dr. Adler makes the bold claim that natural labor forces could not have caused Plaintiff's injury despite the fact that Dr. Allen explained that injuries like the one Plaintiff suffered "**do occur in the absence of recorded or probable shoulder dystocia or in the absence of traction.**" Exhibit "W" at 613-14 (APP 0794-795) (emphasis added).

15

Another article Dr. Adler relied upon was *A Multicenter Assessment of 1,177 Cases of Shoulder Dystocia: Lessons Learned*. *See* Chauhan, S. P. et al, *A Multicenter Assessment of 1,177 Cases of Shoulder Dystocia: Lessons Learned*, American Journal of Perinatology, 31:401-406 (2014), Exhibit "Y" (APP 0827-0832). This assessment reviewed 1,177 instances of shoulder dystocia that occurred over a seven-year period so as to provide guidance to clinicians on how to manage shoulder dystocia. *Id.* at 402 (APP 0829). From this review, the article acknowledges, like the ACOG report, Dr. Allen's article, and Drs. Gurewitsch's and Allen's article do, that fact that brachial plexus injuries "may occur even if management is appropriate as **the injury may be secondary to pressure on the fetus or maternal propulsive forces.**" *Id.* at 403 (APP  0830) (emphasis added).

The application of the 2014 ACOG report to Dr. Soffer's opinions applies in equal measure to Dr. Adler's opinions. Thus, in the same fashion as Dr. Soffer, Dr. Adler's opinion is **not** supported by the pediatric, orthopedic, and neurologic literature or the obstetric community as it has no support in "high quality" and "consistent data." *See* Exhibit "F" at 37 (APP 0574). It likewise has no support in the facts of record. As discussed *supra* relative to Dr. Soffer, no witnesses testified in their depositions to seeing any medical provider applying what could be described as excessive force or traction. Thus, the only possible evidence Dr. Adler has to support his opinions is the existence of the brachial plexus injury itself. This tactic has been expressly rejected not only by the medical community to which Dr. Adler is a part of, but also various state and federal courts as discussed in *Williams*, *supra*.

Notably, this matter is not the first in which Dr. Adler has attempted to testify that only excessive force unrelated to forces of labor can cause a brachial plexus injury. In *Araoz*, *supra*, Dr. Adler testified to the **exact same opinion he seeks to offer now.** 2008 WL 11449314 at \*6.

16

Specifically, Dr. Adler "stated that only excessive lateral force on the nerve, which occurs when the ear is moved toward the shoulder, can cause the injury." *Id.* However, the Court found this opinion to be contradicted by evidence that showed a brachial plexus injury "can occur in babies who do not confront shoulder dystocia **and without the application of traction.**" *Id.* at *13 (emphasis added). The Court held that "Plaintiff failed to present sufficient evidence … to cause the Court to embrace her theory that the only force during delivery that can cause the injury she sustained is doctor-applied force." *Id.* The Court noted that the plaintiff's position, driven by Dr. Adler's opinion:

> **ignores the findings of these studies and the reality that the birth process involves a baby twisting through the birth canal and the concurrent presence of the forces of labor, the mother's pushing and the fact that the shoulder is stuck while the head is out of the uterus and the rest of the body is in the uterus.**

*Id.* (emphasis added).

The causation opinions of Dr. Adler and Dr. Soffer fail to the meet the standards set forth above in *Daubert* for the admissibility of an expert's opinion under Rule 702. Accordingly, their causation opinions in this matter should be excluded in their entirety.

## V.     CONCLUSION

For all the foregoing reasons, Defendant Temple University Hospital respectfully requests that this Honorable Court grant its Motion for Summary Judgment.

Respectfully submitted,

BY:     */s/ Richard S. Margulies, Esq.*
JAMES A. YOUNG, ESQ. (PA 00213)
RICHARD S. MARGULIES, ESQ. (PA 62306)
BURNS WHITE LLC
1880 John F. Kennedy Boulevard, 10th Floor
Philadelphia, PA 19103

jayoung@burnswhite.com
rsmargulies@burnswhite.com
Telephone: 215-587-1600
Facsimile: 215-587-1699

Dated:  September 16, 2022

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|   |   |   |
|---|---|---|
| | : | |
| M.D.R., by her parent and natural guardian, | : | |
| LIANNI ROSY RIVERA | : | CIVIL ACTION |
| | : | |
| v. | : | NO: 2:22-cv-00621-MAK |
| | : | |
| TEMPLE UNIVERSITY HOSPITAL | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |

**ORDER**

AND NOW, this _____ day of _____, 2022, upon consideration of the Defendant Temple University Hospital's Motion for Summary Judgment or, in the alternative, Motion to Preclude Plaintiffs' experts Jeffrey Soffer, M.D. and Daniel Adler, M.D. from testifying to opinions regarding the cause of minor Plaintiff M.D.R.'s brachial plexus injury, and any Response in opposition thereto, it is hereby **ORDERED** that Defendant's Motion is **GRANTED**. It is further **ORDERED** that summary judgment is entered in favor of Defendant and against Plaintiff.

**BY THE COURT:**

_____
**KEARNEY, J.**

## <u>CERTIFICATE OF SERVICE</u>

I, Richard S. Margulies, Esquire, do hereby certify that on this day I caused a true copy of the foregoing Motion for Summary Judgment or, in the Alternative, Motion to Preclude Expert Testimony of Plaintiff's Experts Jeffrey Soffer, M.D. and Daniel Adler, M.D., Relating to Opinions that are Speculative and/or Lacking An Evidentiary Foundation of Defendant Temple University Hospital to be served on the below-listed parties as follows:

**VIA ECF**
Michael J. Weiss, Esquire
1236 Brace Road
Suite B
Cherry Hill, PA 08034
*Counsel for Plaintiff*

**VIA ECF**
Gerald B. Sullivan, Esquire
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA   19106-4476
*Counsel for United States of America*

By: */s/ Richard S. Margulies, Esq.*
RICHARD S. MARGULIES

Dated:  September 16, 2022